477 P.2d 292

**J. H. McCAUGHTRY and Dewey S. Mosley,**
**Petitioners-Appellants,**

v.

**NEW MEXICO REAL ESTATE COMMIS-**
**SION, Respondent-Appellee.**

**No. 9065.**

Supreme Court of New Mexico.

Nov. 23, 1970.

Howden & Turpen, Albuquerque, for petitioners-appellants.

James A. Maloney, Atty. Gen., Fred M. Calkins, Jr., Sp. Asst. Atty. Gen., Santa Fe, for respondent-appellee.

OPINION

WATSON, Justice.

This is an appeal from the judgment of the District Court of Bernalillo County affirming the decision of the New Mexico Real Estate Commission which suspended the real estate broker's license of petitioner, J. H. McCaughtry, and the real estate salesman's license of the petitioner, Dewey S. Mosley, for periods of six months each pursuant to § 67–24–29, N.M.S.A., 1953 Comp. The parties have stipulated that the court review was under the provisions of § 67–26–20, N.M.S.A., 1953 Comp., which provides for the review of any board decision under the Uniform Licensing Act set forth in §§ 67–26–1 through 67–26–28, N.M.S.A., 1953 Comp.

Appellants complain that the Commission misconstrued the law which requires that deposit money in a real estate transaction be placed in a trust fund, and that its findings were not supported by substantial evidence. Appellants also claim that they

did not receive a fair hearing for the following reasons:

First: Because during the hearing, Commissioner Morgan said to appellant McCaughtry:

"You said awhile ago you didn't have any reason for not having a trust account after that April statement showed that the service charges probably had eaten it out. The law doesn't say that. The law says you will maintain a trust or an escrow account at all times. You're familiar with that, aren't you? It's been in the law since '59. You're responsible for this man's actions, and it seems to me that you were kind of lax in several things there. Also, it seems like both of you are maintaining separate trust accounts. This man, legally, doesn't have one. He's supposed to turn the money in to you and you are supposed to supervise it."

In the Notice of Hearing, McCaughtry, the broker, was charged with failure to maintain trust accounts, as well as failure to deposit the money in a trust account. It was one of appellant's defenses that he was not then dealing in sales in which moneys belonging to others were involved, and that he was not required to maintain escrow accounts, and that Commissioner Morgan's remarks during the hearing were very prejudicial.

Second: Because the violation of § 67-24-29, supra, is made a crime (§ 67-24-34, supra), appellants should have been warned of their right to remain silent when they appeared pursuant to the Commission's subpoena.

Third: Because the Commissioners deliberated their decision in the presence of Paul Brown, the administrator or executive secretary of the Commission, who brought the charges, made the investigation, and testified against the appellants.

In connection with this Third reason for unfairness, Mr. Brown was called to supplement the record pursuant to § 67-26-

20, supra, and he testified as follows before the reviewing court:

"Q When these proceedings of July 10th ended and Mr. Mosley and Mr. McCaughtry left, did the Commission proceed immediately to deliberate?

"A Yes, sir, I believe that is correct.

"Q Did you remain with the Commission?

"A Yes, sir, I did. I believe I did. It is hard to recall exactly, but, normally, I am there and I believe I was there when they deliberated.

"Q Did you participate in the discussion?

"A Only if a question is asked of me."

And Commissioner Morgan voluntarily testified as follows:

"Q And chances are he [Brown] was present at the time the Commission passed on whether or not to revoke Mr. Mosley and Mr. McCaughtry's license, is that correct?

"A I would say the chances are almost one hundred percent that he was sitting there, but we keep him there as a matter or as a source of information in case one of us five commissioners has questions or something that is not too clear.

"Q Does he participate in the Commission's decision as to whether or not to suspend or revoke a license?

"A No, sir, never."

A review of the evidence indicates that although McCaughtry, the broker, had a trust account with the Citizens State Bank it was dormant at the time of the receipt of the check from Mr. Dvoracek, the appellants' client. Although there is substantial evidence that the check received in the transaction was mentioned to McCaughtry by the salesman Mosley, it was not deposited in his broker's trust account. Being uncertain as to whether it was expense money, McCaughtry asked Mosley to call Mr. Brown, the administrator, about it. Although disputed, there is

also substantial evidence to find that the check was one which should have been deposited in such an account. The Commissioners' findings V and VI relating to McCaughtry read:

Finding V: "That the Respondent McCAUGHTRY as Broker knowingly failed to receive from the Respondent MOSLEY the funds tendered by DVORACEK and to deposit said monies in a custodial trust or escrow account, contrary to Sec. 67–24–29 Supra, Sub. Sec. E."

Finding VI: "That at the time DVORACEK tendered the said monies to the Respondent MOSLEY the Respondent McCAUGHTRY did not have a custodial trust or escrow account into which said funds should have been deposited contrary to Sec. 67–24–29 Supra Sub. Sec. H, and Rule 15 of the Rules and Regulations of the New Mexico Real Estate Commission."

McCaughtry was suspended for knowingly violating subsections E, H, J, and K of § 67–24–29, supra, and Rule 15 of the Rules and Regulations of the Real Estate Commission. Subsection H requires the deposit of money received in a real estate transaction in a custodial, trust, or escrow account maintained by the broker, and both this subsection and Rule 15, supra, require the keeping of records of all funds so deposited.

Subsections E, J, and K of § 67–24–29, supra, read as follow:

"The commission shall have the power * * * to suspend or revoke a license at any time * * * where the licensee in performing or attempting to perform any of the actions mentioned herein is deemed to be guilty of:

" * * * *

"E. Failing, within a reasonable time, to account for or to remit any moneys coming into his possession which belong to others, commingling funds of others with his own or failing to keep such funds of others in an escrow or trustee account, or failing to furnish copies of all listing and sales contracts to all parties executing the same;

. " * *. *

"J. Violating any reasonable rule or regulation promulgated by the commission in the interests of the public and in conformance with the provisions of this act; or

"K. Any other conduct, whether of the same or different character from that hereinbefore specified, which is related to dealings as a real estate broker or real estate salesman and which constitutes or demonstrates bad faith, incompetency, untrustworthiness, impropriety, fraud or dishonesty."

The factual recital of Finding V would not constitute a violation of subsection E, and the factual recital in Finding VI is not supported by the evidence. The result is that the Commission's findings will not support its judgment. Kennecott Copper Corp. v. Employment Sec. Comm., 81 N.M. 532, 469 P.2d 511 (1970). There is no evidence of McCaughtry's violation of subsections J and K, supra, or of Rule 15, supra; and no findings were made regarding their violation. The factual recital in Finding V and the evidence sustaining it probably would have been sufficient for concluding that McCaughtry violated subsection H, but such was not the Commission's finding. Thus, we can only conclude that the Commission acted arbitrarily in making this finding. Ross v. State Racing Commission, 64 N.M. 478, 330 P.2d 701 (1958).

No law or regulation of the Commission has been pointed out to us, nor have we found one, which requires a custodial, trust, or escrow account prior to the receipt of funds appropriate for deposit in such account. The above findings, when considered with the charge in the Notice of Hearing and with Commissioner Morgan's statement at the hearing, convince us that there was a misconception of the law as well as a lack of evidence involved in McCaughtry's suspension. Although we are familiar with the rule that erroneous

findings of fact, unnecessary to the final decision are not grounds for reversal, International Minerals & Chemical Corp. v. New Mexico Public Service Comm., 81 N.M. 280, 466 P.2d 557 (1970), we are here concerned with two other problems: (1) Whether the proceedings before the Commission were within the requirements of the Uniform Licensing Act, supra, or whether they are so permeated with error as to be inconsistent with the essentials of a fair trial, Ferguson-Steere Motor Co. v. State Corp. Comm., 63 N.M. 137, 314 P.2d 894 (1957); and (2) where one penalty is imposed for five separate violations and four of them cannot be sustained, can the court affirm, if the facts but not the finding support the fifth offense?

■ We proceed to discuss the first problem. The fact that the charges are made by the same body which tries the issues does not, in itself, operate as a disqualification, Seidenberg v. New Mexico Board of Medical Exam., 80 N.M. 135, 452 P.2d 469 (1969); however, the legislature no doubt recognized this entity of court and prosecutor when it set forth the standards required in the Uniform Licensing Act, supra. The Act provides for the right to examine all opposing witnesses, § 67–26–8, supra; it requires that the decision shall be made by a majority of the members of the board, § 67–26–13, supra; and it provides for a complete transcript, § 67–26–12, supra. Relating to the court's review, a pertinent part of § 67–26–20, supra, reads:

" * * * The court may affirm the decision of the board or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: in violation of constitutional provisions; or in excess of the statutory authority or jurisdiction of the board; or made upon unlawful procedure; or affected by other error of law; or unsupported by substantial evidence on the entire record as submitted; or arbitrary or capricious."

2 Cooper, State Administrative Law, 701, states:

" * * * As the phrase 'unlawful procedure' has been construed in state court decisions, its application is not confined to instances where an agency has failed to comply with specific statutory directives. Rather, it includes any departure from the modes of procedure deemed desirable, at any stage of the proceedings in a contested case."

In Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1937), the Supreme Court points out the unfairness of ex parte discussions with the active prosecutors before the Secretary of Agriculture made his findings. This was deemed more than an irregularity in practice; it was a vital defect. There, the Court said:

" * * * The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the Legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,' essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process.

" * * *

" * * * The requirements of fairness are not exhausted in the taking or consideration of evidence, but extend to the *concluding parts of the procedure* as well as to the beginning and intermediate steps." 304 U.S. at 14, 15, 20, 58 S.Ct. at 775–777. (Emphasis added.)

See also Monon Railroad v. Public Service Commission, 241 Ind. 142, 170 N.E.2d 441 (1960), and In re Amalgamated Food

**120**

Handlers, Local 653-A, 244 Minn. 279, 70 N.W.2d 267 (1955).

The fact that there may be substantial and properly introduced evidence which supports the Board's ruling is immaterial if evidence outside the hearing is considered and relied upon. English v. City of Long Beach, 35 Cal.2d 155, 217 P.2d 22 (1950), where the court said:

"* * * A contrary conclusion would be tantamount to requiring a hearing in form but not in substance, for the right of a hearing before an administrative tribunal would be meaningless if the tribunal were permitted to base its termination upon information received without the knowledge of the parties." 217 P.2d at 24.

See also State ex rel. Ellis v. Kelly, 145 W.Va. 70, 112 S.E.2d 641 (1960).

Although Mr. Brown did not participate in the Commissioners' decision, his presence at their deliberations and his availability there for ex parte testimony and argument was contrary to the rudimentary requirements of fair play and a violation of the Uniform Licensing Act, supra. Although Commissioner Morgan's remarks at the hearing were a departure from desirable procedure, they probably were not prejudicial per se. The prejudice to appellant McCaughtry was in the Commission's misconception that a trust account must be maintained regardless of whether there are any trust funds applicable to it. This error is reflected in the Notice of Hearing, reiterated in Commissioner Morgan's statement and confirmed in Finding VI; it appears throughout the proceedings. We cannot affirm on such a record, nor can we approve the cloistering of the chief prosecutor with the quasi-judicial body during its deliberations.

With reference to the second problem, can we conclude that these errors did not essentially enter into the Commissioners' determination of the length of the suspension or their determination that any suspension would be imposed? We think not. Section 67–26–20, supra, does not permit the court to make the findings or to fix the penalty. Such is the function of the Commission. See In re Blatt, 41 N.M. 269, 67 P.2d 293 (1937). The statute requires that we must reverse if substantial rights have been prejudiced because of administrative findings or conclusions made on unlawful procedure, failure of substantial evidence, or errors in law, all of which we have found to be present here. The court must act within the bounds of the statute. State ex rel. Transcontinental Bus Service v. Carmody, 53 N.M. 367, 208 P.2d 1073 (1949). We must reverse.

We need not determine whether appellant Mosley was prejudiced by Brown's presence during the Commissioners' deliberations, or whether he and appellant McCaughtry should have been warned of their rights to remain silent. Co-appellants' activities are so interrelated that we should reverse in toto the lower court's judgment even if § 67–26–20, supra, does not so dictate. Transcontinental Bus System v. State Corp. Comm., 56 N.M. 158, 241 P.2d 829 (1952).

The judgment of the trial court is reversed.

It is so ordered.

COMPTON, C. J., and TACKETT, J., concur.